MOORES v. LUNT, appellant.

*Lien on vessel — materials furnished to vessel building in foreign State.*

The act of 1862 (chap. 482) does not create a lien upon vessels not building within this State.

The builder of a vessel in course of construction in Massachusetts contracted a debt at New York city with plaintiffs for materials which were furnished in New York to the builder to be used in the construction of the vessel in Massachusetts *Held,* that no lien upon the vessel attached in favor of plaintiffs under the laws of New York, although the materials were actually used in the construction of the vessel. No lien attaches even if the vessel, after her completion, sails into the State of New York.

APPEAL by defendants from a judgment in favor of plaintiffs. The action was brought by Charles W. Moores and others, against Benjamin P. Lunt and others, upon a bond given to discharge an attachment issued against the steamship "The Metropolis." The opinion states the case.

*Beebe, Wilcox & Hobbs,* for appellants, cited *Hiscox* v. *Harbeck,* 2 Bosw. 506; *Phillips* v. *Wright,* 5 Sandf. 342; *Mullin* v. *Hicks,* 49 Barb. 250; *In re Josephine,* 39 N. Y. 19; *Brookman* v. *Hamill,* 43 N. Y. 554; *The Belfast,* 7 Wall. 624.

*George W. Van Siclen,* for respondents, cited *Philips* v. *Myers,* 30 How. 184; *Clark* v. *Thorp,* 2 Bosw. 680; *Van Nest* v. *Talmage,* 17 Abb. 99.

DAVIS, P. J. This is an appeal from a judgment entered upon an order overruling demurrer to the complaint. The grounds of demurrer stated are : First, that the court has no jurisdiction of the subject of the action. Second, that the complaint does not state facts sufficient to constitute a cause of action.

The complaint avers that about the 18th of July, 1871, one Manson was the builder of an unfinished steamship or vessel, now called and known by the name of the Metropolis, then lying upon the stocks and in the course of construction at Newburyport, in the State of Massachusetts; that said Manson, being the builder of said vessel, as aforesaid, contracted a debt at the city of New York with the plaintiffs for materials and articles (specifying them), which were furnished in this State, to-wit : At the city of New York, "for

and toward the building, fitting, furnishing and equiping said steamship or vessel." The complaint then shows that application for a warrant was made to one of the justices of this court, in September, 1871, to enforce the lien of the said debt; that a warrant was issued to the sheriff of the city and county of New York, who attached and seized the vessel; that thereupon the defendant, Benjamin P. Lunt and others, being the owners of said ship, applied to said justice for an order discharging the attachment, and executed the bond set forth in the complaint, conditioned that the obligors will pay the amount of the claims and demands which plaintiffs "shall establish to have been a subsisting lien upon such steamship or vessel Metropolis, pursuant to the provisions of said act" (the act of April 24, 1862, therein before recited), "at the time of exhibiting the same;" that thereupon the vessel was discharged, and this action was commenced upon the bond.

There seems to be no doubt, under the allegations of the complaint, that the debt was contracted within this State; nor that the articles were furnished to the builder within this State; nor that they were furnished for and toward the building, fitting out, furnishing and equiping of the vessel then on the stocks and in process of construction, at Newburyport, Massachusetts.

The point made by the demurrants that the complaint does not show that the articles actually entered into the construction of the vessel, and therefore fails to show a lien, does not appear to us to be well taken. It is undoubtedly true that it must be shown upon the trial that they actually entered into such construction. *Hiscock* v. *Harbeck*, 2 Bosw. 506; *Phillips* v. *Wright*, 5 Sandf. 342. But the averment of the complaint follows the language of the statute (chap. 482, Laws of 1862, § 1); to sustain the averment, the proof above mentioned must be given. The true construction of the language used by the statute and by the pleading is that the materials were furnished for and entered into the construction of the vessel (see *Phillips* v. *Wright*, 5 Sandf. 352), and we think it, therefore, quite sufficient in a suit upon a bond of this character. It is urged, also, that the complaint does not aver the delivery of the articles; but that fact, so far as necessary to be averred, must be deemed to be included in the words "furnished for and toward the building," etc., of the ship.

We think it is not correct to assert that the debt must be held to have been contracted within the State of Massachusetts, because the

articles furnished were used in the construction of the ship in that State. The statute requires that the debt, to be a lien, must be contracted within this State; and the averments of the complaint are substantially that the articles mentioned were purchased and furnished at the city of New York, to the builder named, for the purposes mentioned. We think the contract and indebtedness are sufficiently shown to have arisen within this State.

But the principal question in the case is whether, upon the averments of the complaint as above construed, a lien upon the vessel is shown under the act of 1862. It appears that the ship was in process of construction at Newburyport, in the State of Massachusetts; and that while in such process the builder came to New York and bought the articles mentioned of plaintiffs, at the prices stated, taking them to Newburyport and applying them toward the building of the ship, then on the stocks; and the point is whether a lien on the vessel thereby arose, by force of our statute, which can be enforced as such, under its provisions, whenever the ship, after being completed and launched, shall sail into the jurisdiction of this State. The lien created by the act of 1862 is purely statutory. It does not arise or exist except by operation of the statute; and in all cases where it exists it arises at once (so far as the question in this case is concerned) upon the actual use of the materials furnished in the " building, repairing, fitting, furnishing or equiping," of the ship. It is the lien which arises at that time, for the enforcement of which the statute provides the remedy of attachment. Does such lien arise under the statute where the materials are furnished for and used in the construction of a ship in a foreign State.

The statutes of this State have no extra-territorial effect. The act of 1862 cannot be enforced in Massachusetts. None of the judges of the courts of that State could issue, under the provisions of our act, the attachment thereby given to enforce the lien at Newburyport before the vessel should have sailed from that port. Nor would those courts have recognized any lien on the ship by force of our statute under the facts of this case.

If the statute has no extra-territorial effect how can it be said to have created a lien upon the ship while beyond our jurisdiction ? It is difficult to see the precise grounds upon which such a lien can be said to stand. If it be argued that a lien springs up by force of the statute whenever the ship comes within our jurisdiction, the answer will be that such a case is not provided for by the statute; and

it is doubtful whether it can be enacted by a State that a lien, which did not already exist, shall arise from the act of sailing into the jurisdiction of a State, to be enforced by the State courts. Such a consequence of inter-State navigation might conflict with the federal constitution and the laws of congress. It is not necessary, however, to pass upon that question, because a careful examination will show, as it seems to us, that it was not intended by the act of 1862 to create liens upon vessels not within this State, and there incurring debts for the purposes mentioned in the act. The iteration and the reiteration of the words, "within the State" and "in this State," in the first seem to indicate an intention that those words shall be taken distributively and applied to all the material facts made by the act elementary to the lien.

The second section first provides that the debt shall cease to be a lien at the expiration of six months after the debt was contracted, unless at the time when said six months shall expire such ship or vessel shall be absent from the port at which such debt was contracted, in which case such lien shall continue until the expiration of ten days·after such ship or vessel shall next return to said port. This provision cannot be applied to a vessel constructed or repaired in a foreign State, without holding that the lien continues without limitation until the vessel shall have once entered the port where the debt was contracted, and. afterward "next return" to the same port. A more sensible view would be to hold that the words "next return to said port," when coupled with the words in the first section, which require the debt to be contracted "within the State," indicate a clear intent to limit the lien to vessels within the State when the lien accrues.

The next provision of the second section is that "in all cases such debt shall cease to be a lien upon such ship or vessel whenever such ship or vessel shall leave the port at which such debt was contracted, unless the person having such lien shall, within twelve days after such departure, cause to be drawn up and filed specifications of such lien, which may consist either of a bill of particulars of the demand or a copy of any written contract under which the work may be done, with a statement of the amount claimed to be due on such vessel, the correctness of which shall be sworn to by such person, his legal representative, agent or assigns." The third section declares that such specifications shall be filed in the office of the clerk of the county in which such debt shall have been contracted, etc.

It does not seem possible that the legislature intended by this provision to establish perpetual liens on ships constructed or repaired abroad, of materials sold and furnished in this State, with no requirements of any public notice thereof, unless the ship shall enter the port where the debt was contracted and afterward depart therefrom.

Applying these provisions to cases of vessels built or repaired, or purchasing and receiving in this State the articles and services named in the act, and we have a system of liens simple and easy of enforcement; but carrying it out of the State, and applying it to vessels building in other States, we have one full of difficulty and embarrassments both to the lienor and to the property sought to be affected, and leading to grave conflicts between our statute of liens and the statutes of other States.

The general purpose of the statute in such is obviously to protect our own citizens who furnish materials, etc., to ships and vessels from liability to losses from the transitory nature of the property benefited, the act of using which generally carries it out of the jurisdiction of our local tribunals. A specific lien under certain circumstances is given, and one of those circumstances, in our opinion, is that the work shall be done, or the materials furnished, for which the lien is claimed, within our territorial jurisdiction.

The judgment and order must be reversed, and judgment ordered upon the demurrer, for the defendants.

DANIELS, J., concurred.

*Ordered accordingly.*