## SOUTHERN SURETY CO. v. CORBIT et al.

No. 19125.    Opinion Filed March 4. 1930.

Allen, Underwood & Smith, for plaintiff in error.

Foster & Pinkston, for defendants in error.

HERR, C. This is an action originally brought in the superior court of Okmulgee county by Roy Corbit, Joe Bryant, and O. E. Human, a copartnership doing business under the firm name of Highway Garage, against the Southern Surety Company, a corporation, to recover on a road contractor's bond. The trial was to the court resulting in a judgment in favor of plaintiffs in the sum of $2,111.50. Defendant appeals.

It appears that, on the 29th day of March, 1926, the State Highway Commission entered into a contract with Park-Moran Company, a corporation, to pave a certain highway in Okmulgee county, consisting of approximately five miles. Defendant, as surety, executed a bond guaranteeing payment by the contractors of all indebtedness incurred for labor and material furnished in the construction of said highway.

Plaintiffs sold said contractor large quantities of oil and gasoline, most of which was used by them in the operation of machinery used in connection with the construction work. A portion thereof, however, was used in trucks employed in transporting material to the job. Upon completion of the work, there was due plaintiffs from the contractor, the sum of $2,111.50, which it failed to pay. Suit was then brought on the bond. The items upon which this suit is based consist entirely of oil and gasoline used as above indicated, except a small quantity thereof which was used by employees not in the course of their employment, the amount of which is too insignificant to require attention.

It is contended by defendant that it is not liable on the bond for such items. This contention has been decided adversely to it in the case of Eagle Oil Co. v. Altman, 129 Okla. 98, 263 Pac. 666. It is there said:

"Gasoline furnished to a subcontractor, to be used by him and his subcontractors in performance of a contract for the construction and improvement of a public highway, is material furnished in making such public improvement within Comp. St. 1921, section 7486, for which both principal and surety, under road contractor's bond given pursuant thereto, are liable."

In the case of Hyde Const. Co. v. Frickenschmidt, 140 Okla. 290, 284 Pac. 34, it is held:

"Feed furnished a subcontractor for his

teams, used in completion of public work, is such 'material' as comes within the provisions of a bond executed pursuant to section 7486, C. O. S. 1921, and for which the surety is liable."

See, also, Fuller v. Brooks, 117 Okla. 252, 246 Pac. 369.

Under these authorities, it is definitely established in this state that oil and gasoline furnished a contractor for use by him in the performance of a contract for the construction of a highway is material furnished within the meaning of section 7486, C. O. S. 1921, and that sureties on a road contractor's bond may be held liable therefor.

The next question presented is that of application of payments. It appears from the evidence that there was a running account between plaintiffs and Park-Moran Company, contractor, beginning July 1, 1926, and ending October 30, 1926, which account included items other than oil and gasoline, and for which items it is conceded no action could be maintained on the bond. The items are referred to by the parties as accessories. The entire account during this period amounted to approximately $6,000. The evidence discloses the following cash payments: August 10, 1926, $1,000; August 24, 1926, $544.23; September 15, 1926, $1,000; October 14, 1926, $1,000; or a total of $3,544.23. Other items of credit consisting of returned material were applied on the account, reducing the same to the amount of $2,111.50.

Plaintiffs testify that the cash payments above mentioned were by them applied to payment of the items designated "accessories," or, to use their language, to the nonlienable items; and further testify that such application was made at the time the various payments were made, and that no direction was made by debtor as to how same were to be applied.

It is plaintiffs' contention that, in the absence of an application of these payments by the debtor, they had a right to apply them to the items for which they had no security, or to the nonlienable items. We think this contention correct. In the case of Waples-Platter Grocer Co. v. Hardin, 85 Okla. 49, 204 Pac. 433, this court said:

"When a debtor owing more than one debt to a creditor, or a debt composed of several items, fails to direct how a payment made by him is to be applied, the creditor may, ordinarily, make the application as he may see fit."

Defendant, however, contends that plaintiffs' ledger sheets show that, when these payments were made, they were credited to

the account generally, and that having elected to so apply them they are bound thereby and could not thereafter change their election and arbitrarily and capriciously apply the same in payment of the nonlienable items to its prejudice. Numerous authorities are cited in support of this contention.

If the facts were as contended by defendant, these authorities would apply. We have examined the ledger sheets, and, in our opinion, they support the contention of plaintiffs rather than that of defendant. Pencil notations made on these sheets, which were made—under the evidence—at the time the various payments were made, indicate that the payments were, at said time, applied to the items designated as accessories, and the evidence establishes that, where payments were made in excess of the amount due on such items, the excess was applied to oil and gasoline items. This is true as to all payments except the $1,000 payment made on October 14, 1926. At the time this payment was made, the evidence discloses there were not sufficient items designated "accessories," to take up the same. Plaintiffs sought to and did apply a portion thereof to future purchases of items of this character. This they could not legally do. In the case of D'Yarmett v. Cobe, 51 Okla. 113, 151 Pac. 589, this court held:

"A creditor may not, against the will of his debtor, apply a payment on a debt not due to the exclusion of the one due or past due."

The evidence discloses that, on September 15, 1926, the date of the third payment on the account, the account included, up to that time, accessories in the sum of $1,683. Including the payment above mentioned, there was paid on the account, at that time, the sum of $2,544.23. Of this amount, there was credited by plaintiffs on the oil and gasoline items the sum of $861.23. The next and final payment was received by plaintiffs October 14, 1926, and was in the sum of $1,000. At the time thereof, it appears from the ledger sheets that it was credited on the account generally. There is no indication that this payment was applied to any particular items of the account. There were not, at that time, sufficient nonlienable items to consume this payment.

We think defendant was entitled to have this payment credited on the oldest items of the account. In the case of Waples-Platter Grocer Co. v. Hardin, supra, in paragraph 3 of the syllabus, the following rule is announced:

"Where both debtor and creditor have failed

to direct the application of a payment, the duty of making the application devolves on the court, and such payments should be applied according to the justice and equity of the case."

Plaintiffs were not entitled to retain this payment to apply on future purchases of nonlienable items.

Defendant, in support of its contention that plaintiffs had no right to apply any of the payments to nonlienable items, cites Sipes v. Ardmore Book & News Co., 138 Okla. 180, 280 Pac. 805. It is there said:

"Volume 21, R. C. L. 109, announces the following rule: 'The general rule that a surety cannot control the application of a payment is applicable solely in those cases where the principal makes the payment from funds which are his own and are free from any equity in favor of the surety to have the money applied in payment of the debt for which the surety is liable, but where the specific money paid, or property delivered to the creditor, is the identical money or property for the payment or delivery of which the debtor and his sureties have obligated themselves by the contract and undertaking, the surety is not bound by an application thereof to some other debt for which the surety is not liable.'

"Under the above rule plaintiff had no right, as against the sureties, to apply the money arising from the sale of books consigned under the contract to another debt of the principal."

It is obvious that this holding has no application to the facts here presented.

Under the conclusion reached, the judgment against defendant is excessive, and should be modified by reducing the amount of recovery from $2,111.50 to $1,111.50, and, as so modified, should be affirmed.

BENNETT, HALL, EAGLETON, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.